## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PATRICIA FRANK | : | CIVIL ACTION |
| | : | No. 12-34 |
| Plaintiff, | : | |
| v. | : | |
| | : | JURY TRIAL DEMANDED |
| THE PNC FINANCIAL SERVICES | : | |
| GROUP, INC. | : | |
| | : | J. Sean J. McLaughlin |
| Defendant. | : | |

## PLAINTIFF'S MEMORANDUM OF LAW IN RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, by and through her undersigned counsel, hereby avers as follows:

### I.      Introduction/Procedural History

Defendant's motion for summary judgment is currently before the Court for disposition. For the reasons set forth herein, the motion is without merit and must be denied.

On January 26, 2012, Plaintiff commenced this action by filing a civil action complaint alleging violations of the Age Discrimination in Employment Act, violations of Title VII for religious discrimination, and violations of the Americans with Disabilities Act. *See* docket item no. 1. Defendant filed an Answer to the Complaint on April 3, 2012. *See* docket item no. 5. On November 16, 2012, Defendant filed the motion for summary judgment to which this response is directed. For the reasons set forth herein, the motion must be denied.

### II.     Statement of Facts

Plaintiff hereby incorporates Defendant's Statement of Undisputed Material Facts, Plaintiff's Answer thereto, and Plaintiff's Counterstatement of Additional Undisputed Material Facts as though the same were set forth in full herein.   She will also discuss the pertinent facts in the context of the arguments made *infra*.

2

Additionally, pursuant to the "Stipulation and Order of Confidentiality" of August 23, 2012 (docket item no. 22), Plaintiff's Exhibits "L" and "M" are filed under seal.

**III.   Applicable Standard**

Defendant's motion for summary judgment is without merit and must be denied because genuine issues of material fact remain to be decided in this matter.

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is appropriate only in cases " . . . where there is no genuine issue of material fact for the jury to decide." *Coolspring Stone Supply v. American States Life Ins. Co.,* 10 F.3d 144,148 (3d Cir. 1993). Summary judgment may be granted only when there is no dispute as to an issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.*

In response to a motion for summary judgment, the nonmoving party must demonstrate the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505 (1986). However, the burden always remains on the moving party to show that a rational trier of fact could not find for the non-moving party and that there is no genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S. Ct. 1348 (1986).

In ruling on a motion for summary judgment, the Court must accept and believe the evidence of the non-moving party as true, and must not weigh or consider the credibility of witnesses. *Anderson, supra,* 477 U.S. at 248-52. The evidence of the non-moving party, as stated, must be accepted as true, and any and all doubts must be resolved in his favor. *Eastman Kodak Co. v. Image Technological Services, Inc.,* 504 U.S. 451, 456, 112 S.Ct. 2072, 2076 (1992). Where the non-moving party's evidence contradicts the movant's evidence, then the non-movant's evidence must be taken as true. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.,* 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied,* ___ U.S. ___, 113 S. Ct. 1262 (1993).

A motion for summary judgment must be denied where the record evidence reveals weaknesses, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions such that a reasonable fact finder could rationally find them "unworthy of credence," and therefore conclude that the stated reasons were actually a pretext for discrimination. *Marra v. Phila. Hous. Auth.*, 497 F.3d 286 (3d Cir. 2007); *Fuentes v. Perksie*, 32 F.3d 759 (3d Cir. 1994) (citations omitted).

As will be demonstrated *infra*, Plaintiff has adduced ample evidence of discrimination, and therefore her claims must proceed to trial.

## IV.   Legal Argument

Genuine issues of material fact exist in this case.  Therefore, summary judgment must be denied.

### A. Plaintiff Established a Prima Facie Case of Age, Religious, and Disability Discrimination

#### 1.  Age Discrimination

Plaintiff has adduced sufficient evidence to establish a *prima facie* case of age discrimination.

The Age Discrimination in Employment Act (ADEA) makes it unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).

In order to prevail in an ADEA claim against an employer, a plaintiff must prove that age was a "determinative factor" in the discharge or other decision by the defendant employer. *Gross v. FBL Financial Services, Inc.*, 129 S.Ct. 2343, 2352, 174 L.Ed.2d 119 (2009); *Blum v. Whitco Chemical Corp.*, 829 F.2d 367, 372 (3d Cit. 1987); *Duffy v. Wheeling Pittsburgh Steel*

*Corp.,*738 F.2d 1393, 1395 (3d Cir.), *cert. denied,* 469 U.S. 1087, 105 S. Ct. 592, 83 L.Ed.2d 702 (1984).

The *McDonnell Douglas* "burden shifting" framework applies to ADEA cases. *See Smith v. City of Allentown,* 589 F.3d 684, 690 (3d Cir. 2009).

When a plaintiff alleges discrimination based on age, the *prima facie* case requires proof that: (1) the plaintiff was a member of the protected class, *i.e.,* was 40 years of age or older; (2) the plaintiff was discharged; (3) the plaintiff was qualified for the job; and (4) the plaintiff was replaced by a sufficiently younger person to create an inference of age discrimination. *Keller v. Orix Credit Alliance, Inc.,* 130 F.3d 1101, 1108 (3d Cir. 1997) (*citing Sempier v. Johnson,* 45 F.3d 724, 728 (3d Cir. 1995)).

The first two elements are not in dispute, as Plaintiff was discharged by Defendant when she was over the age of sixty.

As to the third element, it cannot be disputed that Plaintiff was highly qualified for her position, having many years of experience in the banking industry and five years of experience as a bank teller supervisor. *See* Plaintiff's Exhibit A, (Frank Deposition) at pp. 20-21; *see* Plaintiff's Exhibit "C" (Malick Deposition) at pp. 128, 139 (Malick would have liked to continue working with Plaintiff at PNC; Plaintiff had "a lot of potential"). Defendant has offered no evidence that Plaintiff suffered in her performance and the discharge of her duties or that she was placed on a performance improvement plan.

Defendant's sole argument in support of its position that Plaintiff was not "qualified" for the position is that Plaintiff processed a recovery for a buy/sell error. *See, e.g.,* Plaintiff's Exhibit "I" (Defendant's response to interrogatory no. 16) (claiming Plaintiff was terminated for "violating a policy"). Aside from an alleged, singular error, Plaintiff was indisputably highly qualified. Moreover, the error at issue was common and insignificant. Deringer testified that

recoveries such as the one Plaintiff processed on July 28, 2010, occurred "all the time." *See* Plaintiff's Exhibit "F" (Deringer Deposition) at pp. 18-23.

Moreover, by Defendant's own written policy, this error did not render Plaintiff unqualified to continue working at PNC. Defendant's policy merely states that force balancing will result in discipline *up to* termination, which means that Plaintiff could have continued to work for PNC. Therefore, there is a genuine issue of material fact as to whether Plaintiff was "qualified" to work at PNC.

Interestingly, in March 2010, Malick claimed that Plaintiff engaged in the same conduct (processing a recovery after an error) that Defendant now alleges constitutes force balancing and which is the sole basis for her termination. *See, e.g.*, Plaintiff's Exhibit "B"; *see* Plaintiff's Exhibit "C" (Malick Deposition) at p. 49-62; *see* Plaintiff's Exhibit "A," at pp. 49-52. Contrary to its written policy on force balancing, Defendant claims that such conduct rendered Plaintiff ineligible to work at PNC. If this were so, Defendant would have necessarily terminated Plaintiff in March 2010. However, she was not disciplined, suspended, or terminated then, and she had remained covered by PNC's fidelity bond through August 2010. *See* Plaintiff's Exhibit "E," at p. 12.

Therefore, Plaintiff has satisfied the third element of this claim.

Plaintiff also established the final element of a *prima facie* case. While the courts have not established a finite "age difference" that is legally sufficient in all cases, it has been held that a five-year age difference is sufficient, while a one-year age difference is not. *Sempier v. Johnson & Higgins*, 45 F.3d 724, 729 (3d Cir. 1995) (citations omitted). Here, Plaintiff's replacement was more than twenty years younger than Plaintiff, which is legally sufficient to create an inference of age discrimination. *See* Plaintiff's Exhibit "G" (Wheeler Deposition), at p. 9.

Jamie Wheeler, who was in her thirties, was selected by Malick to replace Plaintiff. *See* Exhibit "C" (Malick Deposition) at pp. 11-14; *see* Plaintiff's Exhibit "A" (Plaintiff Deposition) at pp. 108-110.  As additional evidence of age discrimination, Plaintiff was terminated for the alleged "force balancing" of July 28, 2010, while the other, much younger employee involved, Deringer, was not terminated or disciplined.  Id.[1]

### 2.  Religious Discrimination

Title VII prohibits employers from engaging in discrimination on the basis of race, color, religion, sex or national origin. 42 U.S.C. § 2000e-2.

The *prima facie* case and evidentiary burdens of a Plaintiff alleging religious discrimination mirror those of an employee alleging race discrimination.  The burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 803-805, 93 S. Ct. 1817 (1973) applies.

To establish a *prima facie* case, Plaintiff must show that (1) she is a member of a protected class; (2) she was subject to an adverse employment action; (3) she was qualified for the position; and (4) she was replaced by someone outside the protected class or was treated less favorably than a similarly-situated employee outside the protected class.  *McDonnell Douglas*, 411 U.S. at 802; *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252-53, 67 L. Ed. 2d 207, 101 S. Ct. 1089 (1981); *see Abramson v. William Paterson College*, 260 F.3d 265 (3d Cir. 2001); *Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d 313, 318-319 (3d Cir. 2000) (citing *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 522 (3d Cir. 1992)).

As set forth in Section IV.A.1, *supra*, the first three elements are not disputable.  Plaintiff was a qualified teller supervisor and practicing Protestant who was terminated from her

---

[1] Plaintiff recognizes that Deringer was a teller and not a supervisor.  However, it is remarkably incongruous that Deringer suffered no discipline whatsoever, while Plaintiff suffered the most severe form of discipline.

employment.   *See* Plaintiff's Exhibit N.   Termination of employment "...unquestionably constitute[s]" an adverse job action.  *See Sgro v. Bloomberg, L.P.,*  331 Fed. Appx. 932, 939 (3d Cir. 2009).

With respect to the fourth element, Plaintiff has sufficiently established that she was replaced by a non-Protestant, Wheeler, and treated less favorably than non-Protestant employee, Deringer.  Plaintiff had regular, daily contact with Wheeler and Deringer while working at PNC.  Plaintiff *regularly* discussed her Protestant faith and involvement in the Protestant church with them.  Despite these frequent conversations, Wheeler and Deringer did not confirm or relate that they were Protestant.  *See* Plaintiff's Exhibit "N."  Viewing the light in the evidence most favorable to Plaintiff, and drawing from common sense and experience, one could reasonably conclude that, if Wheeler and/or Deringer were Protestant, they would have indicated as much in the natural course of conversation, at some point in time.

Moreover, Defendant has not offered any evidence to indicate that Wheeler and/or Deringer were Protestant. Defendant has not argued that it replaced Plaintiff with a Protestant. Defendant only argues that Plaintiff failed to establish that other, non-Protestant employees were not terminated for alleged force balancing.  *See* Defendant's Memorandum of Law in Support of Motion for Summary Judgment, at p. 10.  If Plaintiff's replacement was Protestant, Defendant would have certainly advanced that evidence and argument.

Additionally, Deringer, the other employee involved in the incident of July 28, 2010 was not disciplined.  *See* Plaintiff's Exhibit "N."  Recognizing that Deringer was a lower-level employee, logic dictates that if Plaintiff's error was so egregious as to warrant termination, Deringer's role, even if deemed less culpable, would still warrant some level of discipline.

In summary, Plaintiff has established a *prima facie* case of religious discrimination.

**3.  Disability Discrimination**

The ADA prohibits discrimination against any "qualified" individual with a disability. *See* 42 U.S.C. § 12112(a); 43 P.S. § 955(a).

Under the Americans with Disabilities Act ("ADA"), "no covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

A qualified individual with a disability is a person "with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). The ADA defines a "disability" as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102 (2).

Claims that an employee was the subject of discrimination because of a disability are evaluated under the *McDonnell Douglas* burden-shifting paradigm. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

In order to establish a *prima facie* case of discrimination under the ADA, thereby satisfying the first prong of the *McDonnell Douglas* burden-shifting paradigm, a plaintiff must be able to establish that she (1) has a "disability"; (2) is a qualified individual; and (3) has suffered an adverse employment action because of that disability. *Deane v. Pocono Med. Ctr.*, 142 F.3d 138, 142 (3d Cir. 1998) (citing *Gaul v. Lucent Techs., Inc.*, 134 F.3d 576, 580 (3d Cir. 1998)). To sustain a claim for discriminatory termination of employment due to disability, Plaintiff must show that she is a "qualified individual with a disability" and that she suffered an adverse

9

employment decision as a result of her disability. *U.S. Airways, Inc., v. Barnett*, 535 U.S. 391, 412-413 (2002); *Buskirk v. Apollo Metals*, 307 F.3d 160, 166 (3d Cir. 2002).

The analysis of whether Plaintiff was regarded as disabled does not focus on Plaintiff's abilities, but rather upon the reactions and perceptions of the persons working or interacting with her. *Kelly v. Drexel Univ.*, 94 F.3d 102 (3d. Cir. 1996).

Defendant has not disputed that Plaintiff was a qualified individual with a disability, presumably because Multiple Sclerosis constitutes a "disability" under the ADA.[2]  *See, e.g., Vaughn v. Sullivan*, 83 F.3d 907 (7th Cir. 1996); *EEOC v. Chevron Phillips Chem. Co.*, 570 F.3d 606 (5th Cir. 2009); *Ley v. Wisconsin Bell, Inc.*, 819 F. Supp. 2d 864 (E.D. Wisconsin 2011); *Wiesman v. Hill,* 629 F. Supp. 2d 106 (D.C. Mass. 2009).  Moreover, there is sufficient evidence to allow the case to proceed to trial under the theory that Defendant "regarded" Plaintiff as disabled under the ADA. *See, e.g., Francis v. City of Meriden*, 129 F.3d 281, 286 (2d Cir. 1997). Additionally, Plaintiff established that she could perform the essential functions of the teller supervisor position without accommodations.  *See, e.g.,* Plaintiff's Exhibit "A" (Plaintiff Deposition) at pp. 128-129.

Defendant argues causation, alleging that Plaintiff was terminated because of "her violation of PNC policy prohibiting force balancing." *See* Defendant's Memorandum of Law in Support of Its Motion for Summary Judgment, at pp. 12-14.

Viewing the evidence in the light most favorable to Plaintiff, Plaintiff has adduced sufficient evidence that she was actually terminated because she was "disabled."  Plaintiff was terminated just a month after disclosing to Malick that she suffered from MS. *See* Plaintiff's Exhibit "A" at pp. 104-105, 122-124, 130-131.  *See Trujillo v. PacifiCorp*, 524 F.3d 1149 (10th

---

[2] To the extent that Defendant has argued Plaintiff is not "qualified" because she processed the recovery on the buy/sell error, Plaintiff responds with the argument set forth in Section IV.A.1.

Cir. 2008) (holding that the six week time period between an adverse employment action and the plaintiff's protected activity established causation).

In addition to temporal proximity, Malick's unsympathetic response to Plaintiff's announcement that she had MS and her failure to offer Plaintiff any accommodation, and the fact that Plaintiff was replaced by a non-disabled, Wheeler, person, is further evidence of disability discrimination. *See* Plaintiff's Exhibit "N." Moreover, Defendant has not offered any evidence or testimony that suggests that Malick, Atkinson, or Wheeler suffered from a disability. *See id.* A reasonable inference can be drawn from to the temporal proximity between the revelation of Plaintiff's disability and her termination, and Malick's unsympathetic reaction, that Plaintiff was terminated in violation of the ADA. The fact that Plaintiff was terminated by non-disabled employees and replaced by a non-disabled employee is further evidence of discrimination. *See, e.g., Walton v. Mental Health Ass'n,* 168 F.3d 661, 668 (3d Cir. 1999).

**B.** **Plaintiff Can Demonstrate Pretext in Defendant's Proffered Reasons for Terminating Plaintiff**

Once Plaintiff has set forth a *prima facie* case of discrimination, Defendant must produce a legitimate, non-discriminatory reason for the adverse employment action. *See Raytheon Co. v. Hernandez,* 540 U.S. 44, 51, 124 S. Ct. 513, 518, 157 L. Ed. 2d 357, 364-5 (2003). As the Third Circuit Court of Appeals has noted:

> Briefly summarized, the *McDonnell Douglas* analysis proceeds in three stages. First, the plaintiff must establish a *prima facie* case of discrimination. If the plaintiff succeeds in establishing a *prima facie* case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection. Finally, should the defendant carry this burden, the plaintiff then must have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Jones v. School Dist. Of Philadelphia,* 198 F.3d 403, 410 (3rd Cir. 1999) (citing *McDonnell Douglas,* 411 U.S. at 802).

> [A] plaintiff who has made out a *prima facie* case may defeat a motion for
> summary judgment by either (i) discrediting the proffered reasons, either
> circumstantially or directly, or (ii) adducing evidence, whether circumstantial or
> direct, that discrimination was more likely than not a motivating or determinative
> cause of the adverse employment action.  Thus, if the plaintiff has pointed to
> evidence sufficiently to discredit the defendant's proffered reasons, to survive
> summary judgment the plaintiff need not also come forward with additional
> evidence of discrimination beyond his or her *prima facie* case.

*Fuentes v. Perskie*, 32 F.3d 759, 764 (3rd Cir. 1994).   The weaknesses, inconsistencies,

incoherencies, or contradictions in Defendant's proffered legitimate reasons for its actions are

such that a reasonable fact finder could rationally find them "unworthy of credence," and

therefore pretextual.  *See Marra v. Phila. Hous. Auth.*, 497 F.3d 286 (3d Cir. 2007); *Fuentes v.

Perksie*, 32 F.3d 759 (3d Cir. 1994) (citations omitted).

"The plaintiff must show not merely that the employer's proffered reason was wrong, but

that it was 'so plainly wrong that it cannot have been the employer's real reason.  The question is

not whether the employer made the best, or even a sound, business decision; it is whether the real

reason is [discrimination].'" *Atkinson v. Lafayette College*, 460 F.3d 447, 454 (3d Cir. 2006)

(citation omitted).

Pretext can be demonstrated in a variety of ways, including, but not limited to differential

treatment of similarly situated employees and procedural irregularities.   The former is

particularly relevant where the defendant has proffered a legitimate non-discriminatory reason

for the adverse employment action. *Trujillo v. PacifiCorp*, 524 F.3d 1149 (10th Cir. 2008)

(citation omitted).

In most employment discrimination cases, there is no "eyewitness" testimony as to the

employer's mental processes.  *U.S. Postal Service Bd. of Governors v. Aikens*, 460 U.S. 711, 716;

103 S. Ct. 1478 (U.S.S.C. 1983).   Where "smoking gun" evidence of discrimination is lacking,

the proper inquiry is "whether evidence of *inconsistencies* and implausibilities in the employer's

proffered reasons for discharge reasonably *could* support an inference that the employer did not

act for non-discriminatory reasons, not whether the evidence *necessarily* leads to [the] conclusion that the employer did act for discriminatory reasons." *Josey v. Hollingsworth Corp.*, 996 F.2d 632, 638 (3d Cir. 1993) (citations omitted).

### 1. Plaintiff's Exhibit "B" was fraudulently created by Defendant at or after Plaintiff's termination in order to justify its pretextual reason for termination

Discrimination may be inferred where there is evidence that Defendant's proffered reasons were a *post hoc* fabrication to conceal its true, unlawful, reasons for termination. *See, e.g., Fuentes v. Perskie*, 32 F.3d 759, *supra*.

A "parties falsehood or other fraud in the preparation and presentation of his cause, his fabrication...of evidence... is receivable against him as an indication of his consciousness that his case is a weak or unfounded one; and from that consciousness may be inferred the fact itself of the cause's lack of truth and merit." *McQueeney v. Wilmington Trust Co.*, 779 F.2d 916, 921-22 (3d Cir. 1985) (quotation omitted). From the fact of the *post hoc* creation of this document and the falsity of its conduct, the jury may infer that the real motivation for terminating Plaintiff is the one that the plaintiff has charged. *Sheridan v. E.I. Dupont de Nemours & Co.*, 100 F.3d 1061 (3d Cir. 1996).

The very existence of Plaintiff's Exhibit "B" is evidence that Defendant's alleged reason for termination is pretextual.  There is evidence that this document was created after Plaintiff's termination, perhaps to create support for the pretextual reason given for termination.  This document creates the impression that Plaintiff had been previously disciplined for similar conduct, which Defendant could use to support its reasons for termination.  This fabrication of prior discipline is evidence that Defendant knew its proffered reason was false and sought a means to conceal or mask its falsity.

First, Plaintiff testified that she had never seen Exhibit "B" before, and furthermore that she was never reprimanded or disciplined by Malick as Exhibit "B" indicated. *See* Plaintiff's

Exhibit "A," at pp. 46- 50.  Notably, this document was not signed by Plaintiff, nor was she given a copy of it.  *See* Plaintiff's Exhibit "B."  This is evidence that the document was created after her termination.

Furthermore, Malick originally testified that she did initiate written discipline against Plaintiff in February/March 2010.  *See* Plaintiff's Exhibit "C," at p. 49.  She later changed her testimony and stated, in contrast to Plaintiff's testimony, that she provided Plaintiff with a verbal warning on a buy/sell error, and further provided Plaintiff with a copy of Exhibit "B."  Id. at p. 52, 146.  Malick's testimony is perplexing because PNC's detailed policy on "Verbal Warning/Counseling" dictates that Plaintiff should not have received a document memorializing the warning/counseling.  A "verbal" warning, by definition, is not issued in writing.  By contrast, PNC's policy entitled "Written Warning," provides that the employee will be given a copy of any written warning.  *See* Plaintiff's Exhibit "M."[3]

Moreover, Wheeler testified that when PNC issued verbal warnings, the warning was labeled as such, and was written on PNC letterhead.  *See* Plaintiff's Exhibit "G," at p. 27.  This procedural irregularity between the issuance and the appearance of warnings Wheeler received and Plaintiff's Exhibit "B" is further evidence that Plaintiff was treated differently and in a discriminatory manner, and that Exhibit "B" was unofficial and fabricated.

Finally, Atkinson admitted that there was no indication that she discussed the recovery of February/March 2010 with Plaintiff on the date of her termination.  *See* Plaintiff's Exhibit "E," at p. 77.  This fact suggests that the recovery Plaintiff processed in February/March 2010 had never been documented as discipline (or otherwise), and that Plaintiff had done nothing wrong.  If

---

[3] Malick is also inconsistent in her testimony because she stated that she had never known Plaintiff to lie prior to her termination from PNC.  *See* Plaintiff's Exhibit "C" (Malick Deposition), at p. 92.  This is further evidence that there was no discipline warranted or given in March 2010, since the incident documented in Plaintiff's Exhibit "B" would presumably constitute an "act of dishonesty."  See Plaintiff's Exhibit "B."

Exhibit "B" was a true account of events, it would certainly have been discussed with Plaintiff during her termination in August 2010, since it was allegedly the very same conduct which formed the alleged basis of her termination.

From these conflicting facts and testimony, it is clear that one of two things occurred. PNC either failed to follow its own policies in disciplining Plaintiff, a procedural irregularity that is evidence of discrimination; or, Defendant never disciplined Plaintiff in March 2010, which means that Malick gave untruthful testimony and that PNC fabricated evidence, which is evidence that Defendant's proffered reason for termination is false. *McQueeney v. Wilmington Trust Co.*, 779 F.2d 916, 921-22. Either scenario presents inconsistencies and contradictions that render Defendant's proffered reasons for termination incredible. These are genuine issues of material fact that must be decided at trial.

In summary, Plaintiff has adduced sufficient evidence that Plaintiff's Exhibit "B" was created at or after Plaintiff's termination to support Defendant's proffered reason for termination. Defendant created this "verbal discipline" after the fact to justify Plaintiff's sudden termination, which notably violated PNC's policy of progressive discipline. *See* Plaintiff's Exhibit M; *see* Argument, *infra*. In other words, there is evidence that Defendant falsified a document, and that Malick provided false testimony, in order to conceal the discriminatory reasons that motivated the termination.

Moreover, by producing Plaintiff's Exhibit "B," Defendant has painted itself into a corner with respect to its proffered reasons for terminating Plaintiff. Defendant's reason for Plaintiff's termination is that Plaintiff processed a recovery on July 28, 2010 that rendered her "not qualified" to work because she would no longer be covered by the fidelity bond as a result of this alleged "force balancing." By this logic, Plaintiff should have been terminated in March 2010

for the same conduct. *See* Plaintiff's Exhibit "B."[4] *See* Defendant's Memorandum of Law in Support of Motion for Summary Judgment, at p. 5; Plaintiff's Exhibit "E" at p. 12. Under Defendant's reasoning, Plaintiff should have been terminated in March 2010 after processing a recovery for a buy/sell error. The fact that Defendant did not terminate her then creates the inference that her termination was a pretext for discrimination.

Assuming, *arguendo*, that Plaintiff's Exhibit "B" was in fact created by Malick in March 2010, Malick's patently incorrect and improper characterization of this document as a verbal warning (or as a written warning, because she provided a copy of it to Plaintiff), is evidence of pretext. In contrast with Defendant's policy, Plaintiff was not advised that she had received a written or verbal warning, and no document exists that states that Exhibit "B" was in fact a warning.

Viewing the evidence in the light most favorable to Plaintiff, there is sufficient evidence that Defendant fabricated evidence and events in March 2010. In other words, because the incident of July 28, 2010 was so insignificant and did not warrant termination based upon on PNC's own progressive discipline policies, Defendant took desperate action to conceal the unlawful reasons for terminating Plaintiff.

Defendant and Atkinson emphasized that Plaintiff's act of July 28, 2010 was dishonest and therefore required immediate termination (because she could not be bonded). *See* Plaintiff's Exhibit "E" (Atkinson Deposition), at pp. 12-13; *see* Defendant's Memorandum of Law in Support of Motion for Summary Judgment, at p. 5 ("employees who engage in force balancing have committed a dishonest act and are therefore no longer covered by PNC's fidelity bond and thus ineligible for continued employment...."). If that were true, Plaintiff should have been

---

[4] Assuming that Plaintiff was given a copy of Plaintiff's Exhibit "B," it bears noting that this document states that a subsequent error of this type could lead to further discipline, "up to" and including termination. This further rebuts Defendant's argument that it had no choice but to terminate Plaintiff, as it was plainly stated that various forms of discipline could result.

terminated as early as March 15, 2010, since Defendant knew that Plaintiff processed a recovery for a buy/sell at that time.

**2. Termination was a punishment that did not "fit the crime," and was a pretext for discrimination**

A jury must decide whether Defendant's proffered reason for termination is a pretext for its discriminatory animus.  "The plaintiff must show not merely that the employer's proffered reason was wrong, but that it was 'so plainly wrong that it cannot have been the employer's real reason.  The question is … whether the real reason is [discrimination].'" *Atkinson v. Lafayette College*, 460 F.3d 447, 454 (3d Cir. 2006) (citation omitted).

Pretext can be demonstrated in a variety of ways, including, but not limited to differential treatment of similarly situated employees and procedural irregularities.   The former is particularly relevant where the defendant has proffered a legitimate non-discriminatory reason for the adverse employment action. *Trujillo v. PacifiCorp*, 524 F.3d 1149 (10th Cir. 2008) (citation omitted).

Deringer testified that a recovery could be done where one teller bought money for the cash drawer from another teller, but inadvertently failed to fill out the buy/sell at the time.  *See* Plaintiff's Exhibit "F," at p. 18.   Situations like this, which were identical to the incident of July 28, 2010, and where a recovery was subsequently processed, happened "all the time," and did not result in termination. *See id.* at pp. 18, 23.

The irregularity of procedure; namely, the fact that Plaintiff was terminated for this while others were not, and where Plaintiff could have received a much lesser discipline, such as a warning, is highly relevant evidence of discrimination.   Not only has Plaintiff established, through Deringer's testimony, that the processing of a buy/sell recovery was commonplace, but also that others were not terminated for it.  Assuming Plaintiff had done something wrong,

Plaintiff's Exhibit "M" demonstrates that Plaintiff should have been subjected to progressive discipline, and not immediate termination.

Moreover, since Malick claimed that she provided a "verbal warning" to Plaintiff in March 2010 for processing a recovery- the same conduct that allegedly formed the basis for Plaintiff's termination- it follows that processing a recovery is not an act that warrants immediate termination. It then follows that processing a recovery is an act that warrants progressive discipline. *See* Plaintiff's Exhibit "M" (Corrective Action Policy). According to the Progressive Action Policy, the next step after Plaintiff's verbal warning would have been a written warning. If the behavior was not corrected, the following step should have been a period of probation, which would have been followed by a final written warning. Defendant disregarded all procedure, skipped several steps in the disciplinary process, and summarily terminated Plaintiff. A procedural irregularly such as this is clear evidence of discrimination.

In addition to skipping several steps of the Progressive Action Policy and disregarded procedure, Defendant terminated Plaintiff under indisputably mitigated circumstances. First, Defendant failed to explain why it did not terminate Plaintiff the first time she processed a recovery for a buy/sell error, since Defendant maintains that Plaintiff's conduct rendered her ineligible to work at PNC. Secondly, Plaintiff's actions on July 28, 2010 were completely above-board. It is undisputed that the monies at issue were accounted for and there no attempt to defraud PNC or a customer. Moreover, Malick admitted that Plaintiff promptly advised her of the whereabouts of the monies at issue. Plaintiff told Malick exactly what she was going to do, and that she was going to process a recovery. Malick consented to Plaintiff's course of action.[5] Furthermore, Plaintiff documented the location of the monies and the fact that she would process a recovery in her email to loss prevention. Plaintiff accepted the balances before she began the

---

[5] Kellogg testified that if Plaintiff was advised by Malick to complete the recovery, it was proper for Plaintiff to proceed with the recovery. *See* Plaintiff's Exhibit "H," at pp. 24-25.

process of recovery. Finally, the PNC records show that, prior to the recovery, Plaintiff's drawer was under by $500.00 and Deringer's was over by $500.00. *See* Defendant's SOF at paragraphs 26, 33. The records show that there was an underage and an overage prior to the recovery that was processed shortly before 7:00 PM. *See* Defendant's Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment, at paragraphs 26, 33. Therefore, Plaintiff made a complete record of her actions and the location of the monies, and made no attempt to conceal or disguise the circumstances. Therefore, Defendant's claim that Plaintiff engaged in an act of dishonesty is far from colorable and patently false.

Further evidence that Defendant's punishment "did not fit the crime" and example of another procedural irregularity is the fact that Wheeler had made the same mistake of failing to immediately record a buy/sell and was not terminated or demoted. *See* Plaintiff's Exhibit "G" at pp. 30-32, 35. Additionally, Wheeler's patently more serious errors were never met with termination. As a teller supervisor, Wheeler received a verbal warning in approximately August 2012 for leaving the night drop unlocked such that someone could have walked up to the bank and taken the money contained therein. Id. at p. 36. This significant error was not met with termination, a written warning, probation, or a final written warning. Wheeler's error could have cost PNC and/or PNC customers large sums of money, and caused bad publicity. Moreover, it is more likely that this error was an act of dishonesty (in that Wheeler could have intentionally left the box unlocked as part of a plan to commit a theft) than the incident of July 28, 2010. Compounding the disparity in Defendant's treatment of these two teller supervisors, is the fact that, unlike Plaintiff, Wheeler had received discipline on more than one occasion in the past. *See, e.g.,* Plaintiff's Exhibit "C," at p. 101 (Wheeler gave an extra $100.00 to a customer, among other things).

19

Finally, Deringer, who was in her twenties, not disabled, and not Protestant, was not terminated or otherwise disciplined for the alleged "force balancing" or for failing to report it, despite the fact that she knew that Plaintiff was processing the recovery. *See* Plaintiff's Exhibit "A" (Plaintiff Deposition), at pp. 108-109. According to PNC policy, Deringer had a duty to report improper actions of other employees. *See* Plaintiff's Exhibit "L." The fact that she received no discipline, not even informal counseling, for this incident, is further proof that Plaintiff's discipline should have been of a lesser severity.

In summary, Plaintiff has established that, not only was Defendant's decision to terminate Plaintiff "wrong," but also that it is incredible that the proffered reasons are true.

### 3. Defendant cannot point to the "policy" that Plaintiff allegedly violated and which allegedly formed the basis for her termination

Defendant avers that Plaintiff was terminated for "engaging in force balancing on July 28, 2010 in violation of policy." *See* Plaintiff's Exhibit I (Defendant's Interrogatory Responses), at p. 5. Defendant has yet to cite a "policy" that clearly prohibits the conduct Plaintiff engaged in on July 28, 2010.

Even Jamie Wheeler, a teller supervisor at the time of her deposition, could not cite the policy that prohibited processing a recovery in circumstances where a buy/sell transaction was not recorded. *See* Plaintiff's Exhibit "G" at pp. 19-22. She claimed that there is a "policy that states that if---that a recovery cannot be done on like a buy/sell transaction," yet she could not cite the policy nor could she explain the rationale for it. Id. No policy stating as much has been produced. In contrast, Deringer testified that she knew how to process a recovery, and that she would simply obtain permission from a supervisor (such as Malick) before doing the recovery. *See* Plaintiff's Exhibit "F," at p. 16. She testified that a recovery could be performed in factual situations such as the buy/sell error of July 28, 2010. Id. at p. 18. This testimony is consistent with Plaintiff's testimony. The fact that Wheeler's understanding of the policy conflicts with

Plaintiff's and Deringer's understanding, is further evidence that Plaintiff's conduct did not warrant termination. If PNC employees remain confused as to the proper procedure in this regard, Plaintiff's conduct on July 28, 2010 was, at worst, was an innocent misunderstanding.

Defendant merely points to a policy entitled, "Force Balancing is Not Permitted." *See* Defendant's Exhibit "B" (Atkinson Declaration at Exhibit 3). This policy does not apply to the circumstances at issue. On the contrary, this policy prohibits "manipulation" of the cash figures. Id. Atkinson admitted that the circumstances of July 28, 2010 do not fall under the examples of force balancing listed in Defendant's policy. *See* Atkinson Deposition, at pp. 14-17. On July 28, 2010, Plaintiff did not engage in "manipulation," a fact maintained by Plaintiff and confirmed by Kellogg, PNC's loss prevention analyst. *See* Plaintiff's Exhibit "H," at p. 61. In fact, all that Plaintiff sought to do on July 28, 2010, was to correct what she and the teller had failed to document due to a very busy afternoon.

To the extent that this policy applies to the facts of this case, it states that force balancing will result in discipline action *up to and including termination*, which contradicts Defendant's averment that Plaintiff was "ineligible for continued employment with PNC" because she committed an act of dishonesty. *See* Defendant's Memorandum of Law in Support of Motion for Summary Judgment at p. 5; Atkinson Declaration at paragraph 10. In essence, Defendant argues that termination was its only option because processing the recovery was a dishonest act that rendered her ineligible for continued employment (*see* Plaintiff's Exhibit "E," at p. 12). However, PNC's own policies clearly state that Plaintiff could have been given another form of discipline, if a policy violation actually occurred. *See id*; *see* Plaintiff's Exhibit "B."

The fact that Malick told Plaintiff that she could process a recovery is further evidence that Plaintiff did not violate any policy.

Furthermore, Atkinson and Malick could not agree on what was allegedly dishonest about Plaintiff's actions. Atkinson claimed that Plaintiff was dishonest because she processed the recovery without waiting for loss prevention's response to the email. *See* Atkinson Deposition, at p. 13. On the other hand, Malick testified that loss prevention could not give Plaintiff authority to process the recovery. Therefore, Atkinson's claim that Plaintiff should have waited for loss prevention's response is illogical, since they could not authorize the recovery in any event. Atkinson claimed that Plaintiff was dishonest for disobeying Malick, but Malick testified that she never told Plaintiff not to process the recovery. Rather, she merely requested that Plaintiff check with loss prevention as to the proper procedure. *See* Plaintiff's Exhibit "C," at p. 67. The fact that Malick was unsure about the propriety of processing this recovery is further evidence that Plaintiff's conduct was far from culpable, since even the supervisor was unsure of the process. In summary, Defendant cannot articulate what was dishonest about Plaintiff's actions on July 28, 2010, which proves that Defendant's claim that Plaintiff was terminated for an act of dishonesty is bogus.

**4. There is no documentation anywhere, indicating that any investigation took place into Plaintiffs alleged violations or that any recommendation to terminate was ever made by any senior supervisor and Bernatowicz never even bothered to look for relevant documents.**

Christine Bernatowicz, regional manager of the branch where Plaintiff worked and supervisor of Karen Malich specifically stated that, once informed that Plaintiff had allegedly forced balanced, cannot remember asking any questions at all on the nature of the alleged "force balancing". See Bernatowicz's Deposition, hereto attached as Exhibit "O" at 12.

Bernatowicz cannot recall how long she was on the phone with Malich but apparently the matter was turned over to Defendant's investigators. *Id.* at 13. Bernatowicz does not recall who the investigator was, states that an investigation is done but does never saw a written report.

Bernatowicz has no documentation that any investigation was ever done or that any recommendation was ever made based on it. *Id.* at 14-15. Most significantly, Bernatowicz absolutely refused to opine whether Plaintiff would not have been terminated if she had received permission to do the balancing from Karen Malich, which is exactly what Plaintiff has asserted. Bernatowicz's refusal when all of the facts were given to her in the clearest of hypotheticals has to create an issue of material fact. Bernatowicz has created it herself when she indicated that she does not know whether the Plaintiff would have been terminated if the balancing had been authorized by Karen Malich. *Id.* at 16- 30.

Further, Bernatowicz admits that she has no record of ever getting a recommendation to terminate the Plaintiff. She cannot recall speaking to investigators and never even bothered to review Plaintiff's record with the bank. Bernatowicz further admits that Plaintiff never did anything dishonest. *Id.* at 32-37. Perhaps even more significant, Bernatowicz never even bothered to gather documents together on her computer, despite the fact that discovery requests were propounded months ago by the Plaintiff. Bernatowicz cavalierly stated under oath that she did no search for any items, never looked for any items, does not know whether she received any emails that are relevant and search for no documents. *Id.* at 37-38.

**5. The totality of circumstances demonstrate that the termination was motivated by discrimination**

Plaintiff has cast sufficient doubt upon Defendant's stated reasons for the adverse actions against her to overcome summary judgment.  Viewing the foregoing incidents *in toto*, it is clear that there is a sound basis upon which a jury could conclude that the adverse actions taken against Plaintiff were a product of unlawful discrimination on the basis of age, religion, and disability.

As additional evidence of age discrimination, Plaintiff was terminated for the alleged "force balancing" of July 28, 2010, while the other, much younger employee involved, Deringer, was not terminated or disciplined. Moreover, Sylvia Ybanez, a younger teller, has been written up numerous times, like Wheeler, but was not terminated as Plaintiff was. Moreover, Plaintiff's replacement had much less experience than Plaintiff.

Additionally, Malick and Atkinson told Plaintiff that if she was looking for "forgiveness," that "we don't forgive." This was stated in a sarcastic tone that indicated animus against Plaintiff, who was very vocal about her Protestant faith. Malick also previous expressed annoyance when Plaintiff left work at 6:45 PM to attend church services.

Moreover, Defendant has not offered any evidence or testimony that suggests that Malick, Atkinson, or Wheeler suffered from a disability. *See id.* A reasonable inference can be drawn from to the temporal proximity between the revelation of Plaintiff's disability and her termination, and Malick's unsympathetic reaction when Plaintiff revealed her disability, that Plaintiff was terminated in violation of the ADA. Additionally, Malick never asked Plaintiff if she required any accommodations due to her disability. The fact that Plaintiff was terminated by non-disabled employees and replaced by a non-disabled employee is further evidence of discrimination. *See, e.g., Walton v. Mental Health Ass'n*, 168 F.3d 661, 668 (3d Cir. 1999).

Because of the drastic impact of granting summary judgment, summary judgment must be used with due regard for its purpose and should be cautiously invoked so that no one is improperly deprived of trial. *Watson v. Southern R. Co.* 420 F Supp 483(1975, DC SC).

## C.   The "mixed motive" analysis

Plaintiff can also overcome summary judgment under the "mixed-motive" analysis set forth in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 104 L. Ed. 2d 268, 109 S. Ct. 1775 (1989). In such cases, the burden-shifting analysis of *McDonnell- Douglas* is not used. As the United

States District Court for the Western District of Pennsylvania noted in *Black v. Healthcare Services Group, Inc.*:

> *Price Waterhouse* established a two part analysis for a court to examine discrimination cases. First, a plaintiff must present sufficient direct evidence to show that [the plaintiff's protected class] was a motivating factor in the employment decision. Next, once the plaintiff presents this direct evidence, both the burden of production and the burden of persuasion shift to the employer. The burden of persuasion is a heavier burden than the burden of production under the *McDonnell Douglas* analysis in which the defendant must simply set forth a legitimate non-discriminatory reason for the discharge to satisfy its burden. Under *Price Waterhouse,* an employer must present sufficient evidence to leave *no room* for the fact finder to infer that the employer in fact discriminated or retaliated against the plaintiff to satisfy the burden of persuasion. Therefore, to succeed on its motion for summary judgment, Defendant must prove that a rational jury would find that Defendant *would have discharged Plaintiff [] independent of the alleged [] discrimination.*

*Black*, 2007 U.S. Dist. LEXIS 59480 at *9-10 (W.D. Pa. August 13, 2007) (emphasis added).

Significantly, Plaintiff does not need to produce direct evidence of discrimination to warrant analysis under the "mixed motive" framework. *See Desert Palace, Inc. v. Costa*, 539 U.S. 90, 92, 123 S. Ct. 2148, 156 L.Ed. 2d 84 (2003).

As the *Black* court noted, "Courts have been reluctant to grant summary judgment in mixed motive cases." *Black, supra,* 2007 U.S. Dist. LEXIS 59480 at *9-10, *see also Adler v. Madigan,* 939 F.2d 476, 479 (7th Cir. 1991) (finding that mixed motive situations " . . . are ordinarily not grist for the summary judgment mill"); *Burns v. Gadsden State Community College,* 908 F.2d 1512, 1519 (11th Cir.1990) ("at the summary judgment stage, an employer can prevail on this issue only if the record evidence that its employment decision was not based on discrimination is so strong that a reasonable trier of fact must so conclude").

The evidence in this case is not so strong that a reasonable trier of fact could not conclude discrimination played *no role* in Defendant's decision to terminate Plaintiff.   As set forth *supra,* there is sufficient evidence that Defendant's termination of Plaintiff was motivated by discriminatory animus.

## V.   <u>Conclusion</u>

For the foregoing reasons, Defendant's motion for summary judgment must be denied.

Respectfully submitted,

KOLMAN ELY, P.C.

/s/ Timothy M. Kolman
Timothy M. Kolman, Esquire
tkolman@kolmanlaw.net
PA 51982
Wayne A. Ely, Esquire
wely@kolmanlaw.net
414 Hulmeville Avenue
Penndel, PA 19047
(215) 750-3134
(215) 750-3138 (facsimile)

January 20, 2013